Thank you, Your Honor. May it please the Court, John Newpert on behalf of the Defendant Barrett Business Services. This case presents, like the previous case, an issue of contract interpretation. The language in this contract, which is drafted by the Plaintiff Sedgwick, appears at page 3 of the reply brief, and we've coded it there in full. And that's the language, which is an issue in which the District Court erroneously concluded had only one plausible interpretation in the circumstances of this case, and we believe the record reflects that the contractual language is capable of more than one plausible interpretation. Is that the standard, that it's capable of more than one instruction? Or that if you look at it on its face, if the plain meaning is there, then there is no ambiguity? No, I think under Tennessee law, which is the applicable law, is that if the contractual language is capable of more than one plausible explanation. No matter how far-fetched, though? Plausible. It's limited by the context of plausible. Well, how do you do it? At least for me, I didn't see much attention paid to this in your argument, but I'd like to focus on it. If you read the clause, it's that the client agrees to indemnify, and so on, SCMS harmless, with respect to all these losses, damages, costs, with respect to any such litigation, unless and until the finding entered to the effect that SCMS failed to exercise such reasonable care. So it's a prescription that if a claim is made, SCMS gets indemnified, unless there's a finding that it is the party responsible. And it agrees, the next clause as I read it, say that if it's so found, it will indemnify whatever any damages or costs awarded against you, unless the client is the one interacting pursuant to the client's instructions. And you keep fighting to say that it would create this conundrum of cross indemnification, but I don't see it. There just seems to be one phrase in there that's very plain, unless and until. So how do you deal with that? I deal with that by focusing on different language, because I think... No. No, I think the operative language... Problem. I don't think the operative language is that which you focused on. I think the operative language is the language that precedes that, which says, and this is the beginning of the second sentence, however, if Sedgwick is named as a party because of its actions, we're talking here about defense obligations, not indemnity, and I think it's very important to distinguish. But it doesn't say that. It says, however, if Sedgwick is named as a party to any litigation or proceeding or is the subject of any claim or demand because of its actions. Don't run past the comma. However, if Sedgwick is named as a party to any litigation or proceeding, comma, or is the subject of any claim or demand. Because of its actions. I don't think anybody has ever argued that the phrase because of its actions on behalf does not qualify all of the language that precedes it. There's no comma there, is there? There's no comma there. I concede that. But nobody has ever argued in the district court's decision is not dependent on the comma. It's not bound by the district court's interpretation. Is it not? It is de novo. So we're looking at this, you know, looking at the contract and commas are important. And under this circumstance, why is it looking at it from a de novo perspective, why isn't the first phrase, however, if Sedgwick is named as any party to any litigation or proceeding, an independent phrase that does not need to be qualified because of its actions? I guess that is an interpretation of this language that has not been advanced by the party. But again, it's de novo. It's plausible. It's not been argued by the other side in any event. It's not been argued by the other side. They're not urging that reading. They are not. And they are the ones who drafted it. And I think that is one of the reasons. So how does that, one way or the other, how does that help you? It still says, unless and until a finding is entered. What you're focusing on is on behalf of. And you want it to mean something extremely freighted, that it has to be at the direction and so forth, which isn't really what it says. It's just something that is done that has to do with the client and isn't on your own hook. Why isn't it just simply that simple? Well, because that analysis ignores the remainder of the clause, which has a cross duty to defend by Sedgwick, which is the third sentence. How does it? How does it? Why is that? Will you agree that the construct of the first clause that imposes the pen seems to say, to me, I'm being straight up with you. When I read this, I looked at it and I tried to parse it. It seems to say that if your agent in handling these claims gets sued, you will defend it until such time as it turns out that they are the ones that were responsible for it. And at that point, and that implies that there is some judicial finding or some finding, that they are the responsible party and, therefore, stop, defend. And then it goes on in the next clause to talk about what happens if they are the responsible party. And that, the notion that, yes, they were the responsible party, but they were doing it. They were just carrying out what you were doing. So that gives them a proviso. And they are very logical in the relationship between the victim and the agent. So as you go through, explain why they don't each have their own independent construct. Well, because I think the court is overlooking the beginning of the third sentence, where it's stated that Sedgwick agrees to indemnify and hold harmless and defend Barrett. And then it goes on in connection with Sedgwick's performance under this agreement. So the first clause in which Barrett's duties to defend and indemnify is limited because of its actions. The Sedgwick duty to defend and indemnify doesn't use mirror image language. Rather, it uses different language in which Sedgwick agrees to indemnify and defend Barrett, arising out of Sedgwick's performance of the agreement. The performance of the agreement, in our view, is a broader construct than because of actions. And then when you use and you contrast it to the balance of the language, which is applicable to Sedgwick's duty to defend, it escapes from a liability to defend or indemnify if Sedgwick was acting at the specific instructions of Barrett. And so when you apply this language in the context in which it was utilized, Barrett employing Sedgwick as an expert claims manager, we believe that the plausible interpretation that we offered is that Sedgwick has a duty to defend Barrett unless they were acting at the specific instructions of Barrett. And that concept has to be employed in construing the language at the beginning of the section, where a different trigger, if you will, for Barrett's duty to defend, uses language which is more indicative of the precise reason that Barrett or that Sedgwick was sued, which is because of. And so if you look at all of the language in the clause, in which parties were going to have cross duties of defending and indemnifying the other, Barrett, who employed the expert, said that we will both defend and indemnify you when we give you instructions which override your non-negligent advice to us. But if it's a situation in which you, Sedgwick, are acting independent of any instruction of Barrett, that's a situation which Barrett has no duty to defend because that construct then gives the incentive to the expert claims manager to manage claims in a non-negligent and efficient manner. Then why was Sedgwick, I don't understand why the contract was even there in the first place. Your analysis is correct. I mean, it seems to me that what we're talking about here is that the company is hired to perform certain work. It's outsourcing, contracting, and they're just saying, hey, like, you know, if you get sued carrying out our business, then this indemnity clause kicks in. Isn't that a pretty standard sort of thing? Well, that is what the district – that may be standard, whether that's what this language means. So you're saying that even though it's standard, it's not the only plausible meaning and therefore plausible meaning that you have described as the one that we should adopt. What I'm saying is that if that is what Sedgwick intended, you would use different language. You only get into intent if it's ambiguous. Do you agree that if a judge looks at this, DeNoble, and does not find it to be ambiguous, we never get into the intent? No. I would say that the court's duty is to interpret the intent of the parties by the language they used and the context in which they used that language. That is Tennessee law. One cannot ignore the context, and the duty of the court is to interpret the party's intent by the language they used. I read Whitehaven Community Baptist Church v. Holloway, which is a different Holloway than we were talking about in the earlier case, Tennessee case that said that the court will not look beyond the four corners of a contract or to the party's intention when the language of the contract is clear. Do you disagree with that? I don't disagree with that statement in isolation. If you look at the Watson case, the Watson case, which is a 2006 Supreme Court case, said that one looks at if the language is ambiguous. Well, that's the key. That's the key. Of course, if the language is ambiguous, then that's standard contract analysis. Then, of course, you start looking at intention. But the reality is, at least as I look at it, you look at the Whitehaven case, you look at the Allstate v. Watson case. I think you just cited that one. Under Watson, it says if clear and unambiguous, the literal meaning controls the outcome of the dispute. But my question to you, again, is if we look at this language, de novo, and it looks unambiguous to us, we don't ever get to the intent, do we, under Tennessee law? We would lose, yes. I'd like to save the remaining time. Definitely may do that. May it please the Court, Michael Garone on behalf of Sedgwick, which I remind the Court means in the interest of or as a representative for and does not necessarily imply that I'm subject to their express directions as to how to argue the case today. This is a relatively straightforward case of contract interpretation in which the district court properly found as a matter of law that there was no ambiguity in the indemnification provision in the party's contract. Distilled to its essence, the provision calling for Barrett to defend and indemnify Sedgwick is both extremely broad and very simple. It has two components. One, Sedgwick must be named as a party to any litigation, which clearly happened here and no one would dispute. And two, Sedgwick must have been named as a party in that litigation because of its actions on behalf of Barrett. As distinct from its actions on behalf of Jones or Smith or somebody else. Correct. And for itself, presumably, if somebody struck someone or there were sexual harassment or something, that would be outside the boundaries. Correct. Or if they were driving their vehicle and they hit a pedestrian or something or anything that would be in their own interests would not be subject to the indemnification provision. The district court properly found that this element was also met in this case because it was uncontradicted that Sedgwick made the workers' compensation claims management decisions that it did relating to the workers' comp claim at issue here, including a decision to set up an IME and to not authorize surgery in the interests of Barrett. It attempted to act prudently to further Barrett's interests in reducing its exposure on this workers' compensation claim. In fact, Barrett admitted in several of the pleadings in this case and several of their answers and amended answers that Sedgwick reviewed and investigated the workers' compensation claimant's claim on its behalf. The district court applied a common sense dictionary definition of the term on behalf of, which as I stated in my introduction, means in the interest of or as the representative of. Notably, I haven't seen that Barrett quarrels with that particular dictionary definition. Barrett rather offers up its own definition that the term on behalf of means upon Barrett's instructions. But that is not the dictionary definition, and I would submit that it's a counterintuitive gloss. That is actually a phrase you just said. It actually revises the qualifier Sedgwick duty to indemnify. And, Your Honor, I think that's an important point, because I think it shows and establishes that the parties knew how to make another party's instructions relevant to the indemnification calculus. And in this particular case, the only relevance to a party's instructions are that if my client acted unreasonably in claims management activities on the direct instructions of Barrett, then it would not have to indemnify Barrett for that conduct. I'm trying to figure out how this plays, because as I understood counsel's argument, that Sedgwick does agree to defend the client and his directors for all these things. They suffer as a result of any claim arising out of the negligence or willful misconduct, provided that such acts or omissions do not arise out of or relate to oral written instructions. Now, as I understood his argument to be, that's a duty to defend, which arises presumably while the litigation is ongoing. And he's also arguing that, as I understand it, their duty to defend is not triggered unless they are acting out of – you are acting pursuant to those very kinds of instructions. That's how he's reading on behalf of a client. And it seems – I'm trying to figure out if one doesn't wind up negating the other. And this seems a little circular. Do you have any insights? Well, I think if you take each sentence and you read it, you know, in its isolation, each sentence makes perfect sense and is completely unambiguous. And I think when you read them together, they also make perfect sense, because really the crux of the indemnification issue here is my client's reasonable care in the administration of the claims. And if my client acts reasonably, as it did in this case, in which the jury found that, you know, we did nothing wrong in denying the surgery and in accepting the IME doctor's opinion as to the medical treatment, then we deserve to be indemnified and defended for our actions because we acted reasonably. On the other hand, if we act unreasonably or engage in willful misconduct, which I believe is also some of the language regarding our indemnification responsibility, then we have a duty to defend and indemnify. But when does that arise? When does your obligation arise? The clause in less than until clause in the first client of the embarrassment indemnification makes it sound as if it has to be a judicial determination. So how can you, how can Sedgwick agree to indemnify, excuse me, agree to defend before any such time? Well, Your Honor. You know, it's that word defend in there that creates this conundrum. Well, it seems to me that both sides could conceivably, in a specific case, each make the argument under this clear and unambiguous language that the other side has a duty to defend them. And that, I think, is pointed out in Barrett's brief. But that simple fact doesn't necessarily mean that this language is ambiguous. For instance, in this particular case, it's our position that we are entitled to a defense until such time as a judge or jury rules that we acted unreasonably, in which case, at that point, the duty to defend would end and we'd be on our own, I guess, to prosecute an appeal or go forward. And we'd have to indemnify them for defense costs advanced before then. Well, that's something that they didn't ask for in this particular case, but it's … Well, because it wasn't triggered. Right. And certainly, had we been found guilty by the jury of unreasonable claims administration, then, theoretically, Barrett would have a claim that, at that point, they should be subject to their attorney's fees or indemnified. So I don't think that there's anything particularly ambiguous about the interaction between the two provisions. And I think, really, that's Barrett's entire argument in this case, is that when you read both together, there's somehow some ambiguity which is present. And even if you did believe that, I still don't think that their interpretation of the language is correct, because they're grafting on a meaning to the term on behalf of, which really comes out of whole cloth. And I — to answer Judge Smith's question, it has to be a reasonable construct, a reasonable interpretation. And the Tennessee courts have ruled that you cannot have a strained interpretation and you can't rewrite the party's contract in order to make a better agreement. That doesn't, at least my perspective, if I'm understanding Barrett's argument, that they're suggesting that, based on the way the district court decided this, that each party has to defend the other when both of them are sued for Sedgwick's alleged negligence or willful misconduct. Is that your understanding as well? Well, I think Barrett could try to make that argument. I would argue that the timing of it doesn't arise, that the duty to defend arises in our favor initially as soon as the litigation is filed. If you look at the second sentence, it doesn't mention litigation. The sentence in our favor, if I recall correctly, specifically states that the duty arises upon the filing of the litigation. And the next sentence talks about liabilities, losses, or damages. And so I would argue that the duty to defend really doesn't arise at that point. It might arise after a finding is made, and we may have to reimburse them for fees theoretically at that point, but the actual duty arises earlier in our favor based upon the wording of this. And we did draft this, and it's in our favor, because the indemnification provision flowing from Barrett to us is way broader than the indemnification obligation flowing from Sedgwick to Barrett. I'm puzzled about your instruction of the word defend. I did transactional law primarily for 37 years, and I've written thousands and thousands of indemnification clauses, and I always put in indemnify, defend, and hold harmless. But the understanding, at least under California law, is that defend occurs as soon as you get a lawsuit. You've got to be right there. You've got to defend. It sounds to me like you're saying something different than that, and the only thing that troubles me about this is that you look at it on the face of it, it seems pretty clear. But now what you're talking about, I'm not so sure that it – where do you get this idea there's a delayed obligation to defend? Am I missing something about the plain meaning of this? Well, Your Honor, I would say that the – no, I don't think you are. I don't – I think the interpretation of the sentence involving our duty to indemnify is really not before the Court. Right. I'm just talking about the plain meaning here. Right. Because if you're starting to parse language within this and give it some spin, it doesn't appear on the face of it that I'm a little concerned that maybe I'm misreading other parts of it as well. No, because, Your Honor, I think that, you know, one could – you know, like, for instance, in this case, they claim that they tendered the defense to our client, but apparently the lawyer – or they wanted to, but the lawyer didn't do it, or something like that. It's possible that they could have made the claim that we should start defending them right off the bat after the lawsuit's filed, and it's possible we could have made the same claim against them under this language. But, again, when you look at the language, there's nothing ambiguous about it. It says what it says, and just because there may be a dispute as to who has to start defending when doesn't mean that, under the facts of this case, the language doesn't unambiguously gravitate in our favor. Because here, there was no finding ever made that we engaged in any willful misconduct, and the language is clear that as soon as the litigation is instituted, they have to start defending us. And it's not as clear with regards to our duty to, you know, indemnify Barrett. So I don't think that, again, if you read the provisions here, that there's any ambiguity. And under Tennessee law, we cite a case in our brief which says that you have to look at each provision of the contract to see if there's an ambiguity. You do have to read it in the context of the entire contract, but you have to pay attention to the language of each particular sentence. And in this particular case, when you read that sentence which calls for Barrett to indemnify us, it's so clear on its face. It has two requirements. One is that there's a naming of Sedgwick in a litigation, and the second is that we were named because of our actions on behalf of Barrett. And I think that really ends the inquiry. And any attempt to create an ambiguity based upon the next sentence and when the duty to defend arises, I don't think gets Barrett anywhere. And it's really not posed by this particular case. And, again, I think that the principle that cuts through this all is really our reasonableness or unreasonableness in terms of claims management. If we're reasonable, then we are entitled to defense. And if we acted unreasonably, then there's some shifting of the cost of defending the actions. And I think that's, in the context of this contract, a very common sense and practical application of the party's duties and rights. Here, we are the ones that have more expertise in administering workers' comp claims. But if we do so in a reasonable, lawful manner on behalf of Barrett, we shouldn't be subject to liability from a claimant who thinks that we acted wrongfully. And that is really, I think, the central principle that you can use to kind of harmonize any claim of ambiguity here. But in summary, the language is really very straightforward. And I think this is a very simple case of contract construction where the court can just read the language and do as the district court judge did, apply the dictionary definition of the terms in this manner. In terms of the question from Judge Smith about the proper construct, the language of the contract should be viewed in light of the context. But that doesn't mean you start looking at parole evidence about the party's intent. This case can be decided on the four corners of the indemnification provision and the contract between the parties. And viewed in the context of this contract and what the parties were trying to do here, it makes perfect sense that we would not have to pay for a defense when we acted reasonably in the manner in which we administered the workers' comp claims. Does the Court have any other questions? I believe we don't. Thank you. Thank you. Mr. Newport, you have some time remaining. The ambiguity, the two plausible interpretations, arise out of the different language used with respect to each party's duties to defend. That's at core our argument. And because there is different language that is utilized with respect to each party's duty to defend the other, that creates the ambiguity. Did you invoke the second clause in this case, asking them to defend you? East Coast Counsel, we were not involved in the underlying defense. East Coast Counsel was asked to tender defense of Barrett to Sedgwick, and that got lost. Got lost in the sense that it wasn't? It wasn't done. It wasn't done. But if you look at the allegations of the complaint, both Sedgwick and Barrett were sued for the same thing. And in that situation, this contract language creates cross duties to defend. And the court's question about the because of, does that qualify Sedgwick being named as a party to litigation? It must. Otherwise, it would be meaningless. If Sedgwick is named as a party to litigation, one has to know whether they were named as party to a litigation that would give rise to a duty to defend. They could be named as party to all kinds of litigation in which there would be no duty for Barrett to defend. It only has to be because of the fact that they were doing something. And the because of language here has to qualify for. It could mean that. You're saying you don't think that's what was intended, but it could mean that. It could, but that would be patently unreasonable if they were sued for administering somebody else's contract. They couldn't come to us for a defense obligation. And so if the court must, in construing this language, take it in its entirety. And if you do that, I think you will see that there is a plausible contrary interpretation. Thank you, counsel. Arguments have been most helpful. And the case just argued is submitted. Our final case on this morning's docket is Tibbetts v. Kulingoski.
judges: Graber, Fisher, Smith